Case 105—PETITIONS ORDINARY AND EQUITY—February 27.

Ward v. Edge.

Same v. Ward.

Same v. Same.

100    757
129    604

APPEAL FROM DAVIESS CIRCUIT COURT.

1. Adverse Possession—Parol Gift—Evidence.—One in possession of land, claiming it under an adverse possessory title, may show that he entered under a parol gift or purchase; but evidence of a mere promise to give him the land, unaccompanied at the time by any act of possession by the donee, is incompetent.

In this case an infant, when a year old, was taken by a man to raise, and lived with him till he was about grown, when he joined the army. Upon his return he did not return permanently to reside at his old home, but resided elsewhere for several years, when he married, and again went with his wife to live with the man who had raised him. He claims when he went there to live with his wife that the land was given to him verbally, and that he held under that parol gift. Evidence that his father was promised by the owner of the land when he took him as an infant to raise that he would give him all his property was not competent.

2. Pleading—Knowledge or Information.—A denial of knowledge or information sufficient to form a belief as to the existence of an alleged fact, under the provisions of section 126 of the Civil Code, must be specific as to such fact. An answer which does not respond specifically to the allegations of the petition setting

out the heirship of the plaintiffs, who are claimants of land by inheritance, is insufficient.

3. ADVERSE POSSESSION—ENTRY BY PERMISSION.—Possession of land, as the result of an entry on the premises by permission of the legal owner, will not become adverse until some act is committed by the occupant rendering it so, and notice thereof brought home to the holder of the legal title. And where the owner of land occupies it concurrently with one who has entered by his permission, such possession of the owner negatives any presumption that the other's possession is adverse to him.

4. EVIDENCE.—The fact that one who occupies land has paid taxes on it, is competent as evidence tending to prove ownership.

5. CIVIL CODE—CONSTRUCTION.—The words, "estate in possession," in subsection 2, section 490, of the Civil Code, are used as descriptive of the nature of the estate or of its tenure, and not as describing the peculiar situation in which the land itself might be with regard to intrusions upon it by strangers. And the term, "vested estate," used in that section, includes all estates which are not contingent, whether in possession, reversion or remainder, and any of them may be sold when owned by two or more persons, if the other conditions pointed out by the statute exist. And the fact that one remains in possession after a judgment in an ejectment suit against him, does not prevent a judgment in an equitable action for the sale of the land.

6. CHAMPERTY—JUDICIAL SALES.—Judicial sales are not affected by the laws of champerty. (Preston v. Breckinridge, 86 Ky., 619.)

W. F. HAYES and ELI H. BROWN for appellant.

1. A parol gift of land, accompanied with an adverse holding, under the gift for the statutory period, ripens into a possessory title. (Moore v. Webb, 2 B. M., 282; Com. v. Gibson, 9 Ky. L. R., 205, and authorities there cited; 10 Ky. L. R., 607.)

That being true, the evidence of Ward, Sr., and Lanham, showing a specific agreement to give the particular land to appellant, and an express recognition of the obligation to do so were competent.

2. Part of the tenants in common can not recover the whole estate, for they would recover that to which they have no claim or pretense of title. And it appearing on the trial, that title to part of the land sought to be recovered, is not in plaintiff's but in strangers to the suit, the plaintiffs must fail as to that part. (Sedgwick & Wait on Trial of Title to Land, sec. 300; Gray v. Givens, 26 Mo., 291; Dewey v. Brown, 2 Pick (Mass.), 387; Dawson v. Mills, 32 Pa. St., 481; Stephens v. Duggles, 5 Mason, 221;

Larne v. Slack, 4 Bibb, 358; Allen v. Trimble, 4 Bibb, 25. Davis v. Whitesides, 1 Bibb, 513.)

3. The judgment neither locates the land generally or specifically, does not attempt a description of it by county, precinct, neighborhood, adjacent holders, or by number of acres or by metes and bounds. Such a judgment is invalid, because too vague and uncertain. (Faught v. Henry, 13 Bush, 471; Lawless v. Barger, 9 Bush, 666; Runyon v. Darnall, 10 Bush, 69.)

4. In the equitable action a sale of the land was sought under the provisions of sub-section 2 of section 490, of the Civil Code. The purpose of that section was to give joint owners in possession a way of selling the land when it could not be divided without impairing its value, and dividing the proceeds.

Plaintiffs not being in possession, they could not maintain the action at all. An action to try the title or possession of land can not be maintained under that section.

O. H. HAYNES OF COUNSEL ON SAME SIDE.

LITTLE & LITTLE FOR APPELLEES.

1. A traverse is defined by the Civil Code, sub-sec. 7, section 113, to be "a denial by a party of facts alleged in an adverse pleading, if they be presumptively within his knowledge; or a denial of them, or a denial that he has sufficient knowledge or information to form a belief concerning them, if they be not presumptively within his knowledge." The statement in the answer that "as to who are the children of the said alleged sons and daughters of John Ward, who the sons or daughters married, who are the children or grandchildren or descendants of them, either immediate or remote, he has no knowledge or information sufficient to form a belief," is not a sufficient denial of the specific facts alleged in the petition showing heirship. (Bliss on Code Pleading, p. 832; Van Santvoord's Pleading, 605; Gas Co. v. San Francisco, 9 Cal., 474; Corbin v. Com., 2 Met., 380.)

2. The evidence as to the alleged agreement between appellant's father and his foster father in 1844, when the decedent took him to raise, was properly rejected. Appellant is not claiming under that agreement, and has relied upon no such agreement in his pleadings, and it could not possibly throw any light upon an alleged parol gift in 1871, or possession taken thereunder.

3. If both parties claim to have derived title from the same person, neither is required to show title in him. (Finch v. Ulman (Mo.), 24 Amer. St. Rep., 383.)

4. If there was any misjoinder in the equitable action, it was waived by appellant, because no objection was made.

5. The words "estate in possession," as used in section 490, of the Civil Code, are descriptive of the nature of the estate to be devised or of its tenure, and not descriptive of the peculiar situation in which the land itself might be with regard to intrusions upon it by strangers. (May v. Slaughter, 3 Mar., 508.)

And the fact that appellant remained in possession after the judgment in ejectment against him, did not affect the right of the appellees to a sale of the land and a division of the proceeds. (Chiles v. Jones, 2 Dana, 25; Batterton v. Chiles, 12 B. M., 354.)

6. Decretal sales are not affected by champerty laws. (Frizzle v. Veach, 1 Dana, 212; Preston v. Breckinridge, 86 Ky., 619.)

POWERS & ATCHISON of counsel on same side.

JUDGE BURNAM delivered the opinion of the court.

In the first-styled appeal the action was instituted by appellees in the Daviess Circuit Court to recover a tract of one hundred and fifty-nine and a half acres of land located in said county, which was claimed by appellees to belong to them as heirs at law of one Walter Ward, deceased, who had died childless and intestate, they being the children of his deceased brothers and sisters, all of whom were the descendants of decedent's father, John Ward.

The land was described by metes and bounds, and the exact relation of each plaintiff to decedent was specifically recited, giving the name of such heir, the name of the ancestor, and their relationship to decedent, Walter Ward, same being fully and carefully set out in as many separate paragraphs as there were classes or families of such heirs, the number being large, and alleging that the land was in the possession of the defendant, Daniel T. Ward, without right, who had acquired same as the tenant of deceased,

Walter Ward, and that he wrongfully refused to give the possession, and asked a judgment for the recovery of same, with damages for its retention.

The defendant answered, and denied that Walter Ward, deceased, owned the land sued for at the date of his death, or that he was in possesion thereof. He denies that he has knowledge or information sufficient to form a belief that Walter Ward was a son of John Ward, or that his children were correctly set out, or that the descendants of such children of John Ward are the heirs at law of Walter Ward, or that the land sued for belonged to them. "He says that who are the children of the alleged sons and daughters of John Ward, who the sons or daughters married, who are the grandchildren or descendants he has no knowledge or information sufficient to form a belief. He denies that plaintiffs, or any of them, are the heirs at law of said Walter Ward, or that they own the land sued for, and asserts ownership of the land sued for by actual adverse and continuous possession for more than twenty years before the death of Walter Ward in 1892."

The affirmative allegations of this answer were denied and the case tried by a jury, and the verdict rendered for appellees for the land sued for. Thereupon appellant filed grounds, and asked for a new trial. This was denied him, and he has appealed to this court. The errors complained of are:

1st. That the court erred to his prejudice in refusing to admit "the evidence of James Ward, Sr.," proposed to be introduced by defendant; that Walter,

Ward agreed with the father of defendant at his home in Daviess county, when defendant was one year old, to take the defendant as his own child and raise him, and give him all his property; that this agreement was made in the presence of the witness, and that the father of defendant agreed that Walter Ward should take defendant on said condition, and that Walter did take defendant on those conditions and under said agreement.

2d. The court erred to his prejudice in refusing to allow Richard Lanham, a witness for defendant, to state to the jury that he was a neighbor and intimate friend of Walter Ward for fifty years before his death, and that on several occasions, between the time Walter Ward took the defendant to raise and the defendant's marriage and settlement on the land in controversy, Walter Ward told him that he had promised defendant's father to give him his property, and that he intended to do so, and whereby defendant was prevented from having a fair trial.

3d. Because the court erred in refusing to give instructions from 1 to 14 inclusive, offered by defendant, and in giving 1 to 5 inclusive, and because the verdict was not sustained by the evidence, and was contrary to law.

The evidence in this case shows that Walter Ward owned a considerable tract of land in Daviess county, a part of which he had inherited and the balance he had acquired; that he was married, but childless; that about 1844, when he was about forty-eight years old,

he and his wife took appellant, then an infant about one year old, home with them to live; that he resided with them from that time until he left to join the army during the war of 1861-5; that from the time he was old enough he worked on the farm; after his return from the army he did not return to the home of Walter Ward to remain permanently, but lived elsewhere until his marriage in October, 1871, except that during this time he raised a crop on the place; that after his marriage he took his wife to the farm of Walter Ward, and lived there ever since; for the first year he lived in the same house with Walter Ward and his wife, and that during the next year he erected, with the assistance of Walter Ward, a house with one room, made of logs, a small stable, fenced in a garden, dug a well, set out an orchard, and cleared the timber from about ten acres of land. He remained in this house until the death of Walter Ward, and had ten children born to him and his wife.

About ten years after appellant moved on the place the wife of Walter died, but he continued to occupy alone his old residence.

Appellant claims that when he moved to the farm in 1871 Walter gave him verbally the entire tract of four hundred acres, and that he had since held possession of it, claiming that it belonged to him. In support of this claim he introduced Haffey, a tobacco buyer, who proved that in 1881 or 1883 he went to the place and saw Walter, and that he refused to sell until appellant consented; Hawkins, who raised a crop on

the land in 1884, on shares, and that he delivered the rent corn, which was, by Walter's direction, put into Daniel's stable—that in 1891 he tried to rent a part of the farm from Walter, and that he refused to rent without seeing Daniel Ward; Charles P. Brown, who, in 1890, applied to Walter Ward for a lease of part of his place, and he was directed to see Dan—that he had nothing to do with it; James Ward, Jr., who stated that Walter Ward told him in the spring of 1891 or 1892 that he had nothing to do with the land—that Dan could do as he pleased; and several other witnesses who proved that they had cropped on parts of the land, and had, by direction of Walter Ward, delivered the rent corn into Dan's stable.

These facts, it is claimed, are such acts of ownership as would have warranted the jury in believing that defendant had acquired a possessory title, if they had also believed that Walter Ward had, in October, 1871, voluntarily given him the land, and it is urged that the excluded evidence of James Ward, Sr., and Richard Lanham tended to show that Walter Ward had, prior to 1871, when defendant went on the land, agreed by contract to give it to appellant, or had placed himself under moral obligations to give it to him, and that this evidence tended directly to support appellant's claim, and was, therefore, competent.

The facts which James Ward, Sr., was expected to prove occurred nearly fifty years before, at a time when witness was only a very young boy, and more than twenty-five years before the alleged parol gift was made.

Of all rules of evidence, the most universal and the most obvious is that the evidence should be directed and confined to the matters which are in dispute.   The wisdom of this rule can not be doubted.   This rule excludes all evidence of facts which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute; and the reason is that such evidence tends to draw the minds of the jury from the point in issue, and to excite prejudice and mislead them.   (1 Greenleaf, 85.)

The declarations must be connected with the facts in dispute; they must be concomitant with the principal act, and so connected with it as to be regarded as the consequence of the co-existing motives, in order to form a proper criterion for directing the judgment which is to be found.   Declarations of persons in possession of land in disparagement of the title of declarant are admissible.   In fact every declaration accompanying the act of possession, if made in good faith, is competent.   (Greenleaf, section 109, volume 1.)

Tested by these rules, undoubtedly any word or act of Walter Ward, or of appellant made in the presence of Walter, which tended to show the character of the holding of the defendant, would have been competent if same had occurred at the time he went on the place in 1871, or at any time during his occupancy of same; but we think the evidence of a conversation had more than twenty-five years before with the father of defendant is too remote to shed any light upon the character of defendant's possession of the property in dispute,

especially as in the fifty years which elapsed between the date of this alleged conversation and the death of Walter Ward no witness has testified to a renewal or repetition of such declaration.

Appellant did not plead such contract or gift, or that he entered under it. Indeed he does not plead such gift when he moved on the land in 1871, although it was the basis of his claim. We see nothing in the rejected evidence which tends to establish the gift claimed to have been made in 1871, and upon which defendant relies in this action.

In the case of Morse v. Webb, 2 B. Monroe, 282, the declarations and agreements relied on and proven were concurrent with the possession of the property, and there was no question that the holding had been under a claim of right, and that these claims there continued for the full statutory period of limitation.

The case of the Commonwealth v. Gibson, 9 Ky. Law. Rep., 205, cited, simply holds that "if one enters under a parol gift, and holds the land by actual, open and adverse possession, claiming it as his own, such possession is adverse, and the limitation begins to run from that date."

There can be no question as to the soundness of that doctrine. It has been so held by several opinions of this court. (Chamberlin v. McKenney, 6 Ky. Law Rep., 365, and authorities there cited.)

One in possession of land may show that he entered under a parol gift or purchase; but evidence of a mere

promise to give land, unaccompanied at the time by any act of possession by the donee, is, we think, not competent.    We, therefore, think the evidence was properly excluded from the jury.

It seems to us the issue in this case is simply whether defendant had acquired title to the land in dispute by gift from Walter Ward, and whether under such gift he had held same adversely to donor, and with the knowledge of the donor, for the fifteen years.    There is no contention that Walter Ward was not the owner of the land in 1871, when defendant moved on it, and if he was not divested of title by the claims and occupancy of defendant at his death it belonged to his heirs at law.

We do not think the heirship of the numerous plaintiffs, alleged to be the children of the brothers and sisters of the deceased, Walter Ward, and whose kinship is set out specifically and in minute detail, has been put in issue by the general traverse of appellant's answer.

A denial of knowledge or information sufficient to form a belief as to the existence of an alleged fact must be specific as to such fact.    (Civil Code, section 126.)

The allegation of appellant's answer does not respond specifically to the allegations of the petition setting out the heirship of such plaintiffs, and by his own testimony he admits the accuracy of many of these averments.    For these reasons we concur in the ruling of the lower court in overruling the peremptory

instructions asked by appellant from six to fourteen inclusive, all of said instructions being based upon the idea that the heirship of some of plaintiffs was not fully proven, or that they were not alive.

We think the court erroneously placed the burden of showing title in intestate on appellees, when the appellant admitted such title when he went on the land. The only question was whether appellant had ousted him by holding the adverse possession of the land for fifteen years before his death, but these errors were not prejudicial to appellant.

By instruction No. 5 the jury were told that "if they believe from the evidence that the defendant openly and notoriously occupied, took and held possession of the land in controversy in this action, claiming it as his, with the knowledge of Walter Ward and adversely to him for a period of fifteen years or more before the institution of this suit, they should find for the defendant."

By the sixth instruction they were told that "the title to land can not be conveyed in parol, but must be by writing, properly executed. But actual, uninterrupted possession of land adverse to all others, which is open and notorious, under a claim of right or property continuing for fifteen years or more, will ripen into a perfect title in the possessor; and if the jury believe from the evidence that Walter Ward, fifteen years or more before the institution of this action, gave the land in controversy to the defendant, and he, under or by reason of said gift, took possession of said land, or de-

fendant took possession, claiming it as his own ad-
versely to Walter Ward, with his knowledge, and con-
tinuously held and occupied it adversely to and with
the knowledge of said Walter Ward for a period of
fifteen years or more before the institution of this suit,
they should find for defendant."

We think these instruction fully and fairly give to
the jury the law of the case.

Now as to the last exception, that the facts did not
support the verdict, they show that he lived on this
land all his life; that he supported himself from the
produce of same; that he listed it for taxation, paid the
taxes and took the receipts for same in his own name;
that he leased to tenants, one of whom (Evans) lived on
another part of the place for twenty years, and who
rented of deceased.  He sold large quantities of wal-
nut and popular timber from the land, and conducted
a law suit to recover the purchase price of same in his
own name; sold or was always consulted as to the sale
of the crops from the place.

There is no evidence in the record that during the
lifetime of defendant appellant ever claimed to own
this land, either to decedent or any one else; or that
decedent ever made any declaration which even tended
to show that he had given the land to defendant.

It is a well-settled principle of law that possession of
land, as the result of an entry on the premises by per-
mission of the legal owner, will not become adverse
until some act is committed by the occupant rendering
it so, and notice thereof brought home to the holder of

the legal title. (Smith v. Hitchcock, 66 N. W., 791 and 793.

Where the owner of land occupies it concurrently with one who has entered by his permission, such possession of the owner negatives any presumption that the other's possession is adverse to him.

The fact that one who occupies land has paid taxes on it is competent as tending to prove ownership of it. (Wren v. Parker, 14 A. S. R., 127.)

It seems to us that there was sufficient evidence to support the verdict, and the motion for new trial was properly overruled in the ejectment suit.

In the equity suit the defendant says that the relief sought and the judgment entered were in conflict with subsection 2, section 490, Civil Code: "If the estate be in possession and the property can not be divided without materially impairing its value or the plaintiff's interest therein, a vested estate in real property, jointly owned by two or more persons, may be sold."

Appellant insists that the allegation of this petition that defendant was in possession of a portion of the boundary they sought to sell is a fact which defeated the right of plaintiffs to maintain this suit, and the court's power to grant the relief sought, especially in view of section 210, Kentucky Statutes, which provides that "all sales or conveyances, including those made under execution of any lands, or the pretended right or title to same, of which any person at the time of such sale, contract or conveyance had adverse possession, shall be null and void."

Ward v. Edge.

The construction placed by appellant upon the words "estate in possession" is not the legal construction placed on those words.

In the case of May's Heirs v. Slaughter, 3 Mar., 508, the court held: "The words possession, reversion or remainder, are used as descriptive of the nature of the estate or of its tenure, and not as describing the peculiar situation in which the land itself might be with regard to intrusions upon it by strangers."

The term "vested estate," used in section 490, Civil Code, includes all estates which are not contingent, whether in possession, reversion or remainder, and any of them may be sold when owned by two or more persons, and when the other conditions exist pointed out by the statute. The fact that appellant remained in possession after the judgment in the ejectment suit against him did not prevent a judgment for sale of said land. (Chiles v. Jones, 2 Dana, 125; Batterton v. Chiles, 12 Ben. M., 354.)

Judicial sales are not affected by champerty laws. (Preston v. Breckinridge, 86 Ky., 619.)

We do not see that any wrong was done appellant by filing a transcript of the pleadings and judgment in ejectment suit in this action by the verdict and judgment in that case. All the alleged legal rights of appellant to the land in dispute were determined and concluded, and after a full and careful examination of all the questions presented in the three appeals, which have been considered together, we conclude that in each case the judgment appealed from should be affirmed, and it is so ordered.